133 Nev., Advance Opinion 37

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MIRIAM PIZARRO-ORTEGA, AN INDIVIDUAL, Appellant, vs. CHRISTIAN CERVANTES-LOPEZ, AN INDIVIDUAL; AND MARIA AVARCA, AN INDIVIDUAL, Respondents. | No. 68471 FILED JUN 2 2 2017 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |



Appeal from a judgment after a jury verdict in a tort action and an order denying a motion for a new trial. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

*Affirmed.*

Rogers, Mastrangelo, Carvalho & Mitchell, Ltd., and Charles A. Michalek, R. Kade Baird, and Dawn L. Davis, Las Vegas, for Appellant.

Simon Law and Daniel S. Simon, Las Vegas, for Respondents.

---

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

PER CURIAM:

NRCP 16.1(a)(1)(C) requires a party to produce, "without awaiting a discovery request . . . [a] computation of any category of damages claimed." In this appeal, we clarify that future medical expenses

17-20718

are a category of damages to which NRCP 16.1(a)(1)(C)'s computation requirement applies and that a plaintiff is not absolved of complying with NRCP 16.1(a)(1)(C) simply because the plaintiff's treating physician has indicated in medical records that future medical care is necessary. Although respondents did not provide appellant with a computation of their future medical expenses before trial, appellant has not shown that she was unable to contest the reasonableness of the amounts requested, and we therefore conclude that appellant's substantial rights were not materially affected so as to warrant a new trial. Because appellant's remaining arguments also do not warrant a new trial, we affirm the district court's judgment on the jury verdict.

## FACTS AND PROCEDURAL HISTORY

Appellant Miriam Pizarro-Ortega[1] caused a car wreck wherein respondents Christian Cervantes-Lopez and Maria Avarca sustained injuries, primarily to discs in their backs.[2] Respondents underwent various modes of treatment for their injuries and eventually filed the underlying negligence action against appellant. While the action was pending, Christian was referred to a neurosurgeon, Dr. Stuart Kaplan, who informed Christian that he would require a lumbar fusion surgery in

---

[1]We direct the clerk of this court to modify the caption on the docket for this case to conform with the caption of this opinion, which reflects that Miriam Pizarro-Ortega is the only appellant.

[2]Appellant admitted liability. The issues at trial pertained to whether respondents' medical expenses were necessary and whether the costs incurred for those expenses were reasonable.

the future.[3] Dr. Kaplan noted this future surgery in Christian's medical records by indicating, "I have recommended an L5-S1 fusion for him."

As part of their initial disclosures, respondents provided appellant with a computation of their past medical expenses and a copy of Christian's medical records, including the above-quoted record from Dr. Kaplan. At no point before trial, however, did respondents provide appellant with a cost computation for Christian's future lumbar fusion surgery. Consequently, appellant filed a motion in limine seeking to prevent respondents from introducing evidence at trial in support of Christian's future medical expenses. In particular, appellant contended that respondents were required under NRCP 16.1(a)(1)(C) to provide a cost computation for Christian's lumbar fusion surgery. Because respondents failed to do so, appellant contended that respondents should be prohibited from seeking damages at trial for the lumbar fusion surgery. *Cf.* NRCP 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 16.1 . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed.").

Although the record is unclear, it appears that the parties and the district court discussed appellant's motion in limine in the context of this court's then recently published opinion *FCH1, LLC v. Rodriguez*, 130 Nev., Adv. Op. 46, 335 P.3d 183 (2014). In *FCH1*, this court held that a plaintiff's treating physician does not need to provide an expert report

---

[3]A different treating physician recommended that Maria undergo future medical treatment. Because appellant has not presented any individualized arguments with respect to Maria, this opinion discusses the applicability of NRCP 16.1(a)(1)(C) in the context of Christian's treatment.

under NRCP 16.1(a)(2)(B) and can testify regarding any opinions he or she formed during the course of treating the plaintiff so long as all documents supporting those opinions are disclosed to the defendant. 130 Nev., Adv. Op. 46, 355 P.3d at 189-90 (discussing NRCP 16.1(a)(2)'s provision regarding "Disclosure of Expert Testimony"). Evidently based on *FCH1*, the district court concluded that because respondents had disclosed all of Christian's medical records from Dr. Kaplan, and because Dr. Kaplan was Christian's treating physician who would be performing the recommended lumbar fusion surgery, respondents were not required to provide a cost computation for the surgery. The district court consequently denied appellant's motion and permitted Dr. Kaplan to testify at trial regarding the recommended surgery.

The evening before Dr. Kaplan testified at trial, respondents provided appellant with a dollar figure for Christian's surgery. The following day, and over appellant's objection, Dr. Kaplan opined that the surgery would cost $224,100. In appellant's case in chief thereafter, appellant sought to elicit testimony from her medical expert, Dr. Derek Duke, who opined that Dr. Kaplan's projected cost for the surgery "look[ed] very high." On cross-examination, Dr. Duke further opined that "[$]120,000 is what I've seen in the past for the [lumbar] fusion."

Ultimately, the jury awarded Christian $200,000 for his future lumbar fusion surgery. The jury also awarded Maria $85,000 in damages for future medical expenses, and it awarded each respondent damages for past medical expenses, as well as past and future pain and suffering. In total, the jury awarded Christian roughly $499,000 and Maria roughly $222,000. Appellant subsequently filed a motion for a new trial and/or remittitur arguing, among other things, that the district court had

committed reversible error in allowing respondents to introduce evidence of Christian's future medical expenses because respondents had not provided a computation of those expenses as required by NRCP 16.1(a)(1)(C). The district court denied appellant's motion, and this appeal followed.

## DISCUSSION

Appellant contends that the district court abused its discretion in denying her request for a new trial.[4] *See Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 74, 319 P.3d 606, 611 (2014) ("This court reviews a district court's decision to grant or deny a motion for a new trial for an abuse of discretion."). NRCP 59(a) lists several grounds upon which a new trial may be warranted, including, as relevant here: "(1) . . . abuse of discretion by which either party was prevented from having a fair trial; (2) Misconduct of the . . . prevailing party; . . . [and] (7) Error in law occurring at the trial and objected to by the party making the motion." However, even if one of NRCP 59(a)'s new-trial grounds has been established, the established ground must have "materially affect[ed] the substantial rights of [the] aggrieved party" to warrant a new trial. *Id.*

Within this framework, we first consider appellant's argument regarding NRCP 16.1(a)(1)(C) and the district court's admission of evidence pertaining to Christian's future medical expenses. We then

---

[4]As indicated, appellant's motion in district court also sought remittitur of the damages awarded for future medical expenses. Because appellant clarified at oral argument for this appeal that she is seeking only a new trial (and not remittitur), we address appellant's arguments within that context.

consider whether any of appellant's additional arguments warrant a new trial.

*NRCP 16.1(a)(1)(C) and future medical expenses*

Under NRCP 16.1(a)(1)(C), a party is required to produce, "without awaiting a discovery request . . . [a] computation of any category of damages claimed." Appellant contends that a new trial is warranted regarding Christian's future medical expenses because respondents did not provide a computation of those expenses as required by NRCP 16.1(a)(1)(C). For support, appellant relies on several decisions from federal district courts in Nevada that have recognized that future medical expenses are indeed a "category of damages" subject to NRCP 16.1(a)(1)(C)'s cost-computation requirement.[5] *See, e.g., Calvert v. Ellis,* No. 2:13-cv-00464-APG-NJK, 2015 WL 631284, at *1-2 (D. Nev. Feb. 12, 2015); *Smith v. Wal-Mart Stores, Inc.,* No. 2:13-cv-1597-MMD-VCF, 2014 WL 3548206, at *1-2 (D. Nev. July 16, 2014); *Patton v. Wal-Mart Stores, Inc.,* No. 2:12-cv-02142-GMN-VCF, 2013 WL 6158461, at *1-3 (D. Nev. Nov. 20, 2013); *Baltodano v. Wal-Mart Stores, Inc.,* No. 2:10-cv-2062-JCM-RJJ, 2011 WL 3859724, at *1-3 (D. Nev. Aug. 31, 2011). In opposition, respondents contend that despite NRCP 16.1(a)(1)(C), there has been a general understanding amongst Nevada attorneys practicing in state court that there is no requirement to provide a cost computation for future medical expenses. From this premise, respondents appear to be arguing that the *FCH1* opinion reinforced this general understanding because that

---

[5]Our independent research has revealed no contrary authority inside or outside of Nevada.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

opinion did not discuss NRCP 16.1(a)(1)(C).[6] Respondents therefore contend that appellant's relied-upon federal caselaw is inapposite.

Respondents' reading of *FCH1* is untenable. In *FCH1*, this court addressed the discrete issue of when a plaintiff's treating physician must provide an expert report under NRCP 16.1(a)(2)(B) ("Disclosure of Expert Testimony"). 130 Nev., Adv. Op. 46, 335 P.3d at 189-90. In so doing, this court held (1) a treating physician need not provide an expert report so long as the opinion to be provided at trial was formed during the course of treating the plaintiff; and (2) even if an expert report is not necessary, the plaintiff must still disclose to the opposing party any documents the treating physician reviewed in forming his or her opinion. *Id.* These holdings pertaining to NRCP 16.1(a)(2)(B) ("Disclosure of Expert Testimony") did not address, much less abrogate, a party's responsibilities under NRCP 16.1(a)(1)(C) ("Initial Disclosures").

Additionally, and to the extent that the aforementioned general understanding amongst Nevada practitioners is premised on the perceived difficulty in providing a precise dollar figure for a future surgery, that premise is not a valid basis for disregarding NRCP 16.1(a)(1)(C). *See Clasberry v. Albertson's LLC*, No. 2:14-cv-00774-JAD-NJK, 2015 WL 9093692, at \*2 (D. Nev. Dec. 16, 2015) (observing that a party is required to provide a computation of damages based on the information available and that, under the federal counterpart to NRCP

---

[6]Respondents' position regarding *FCH1*'s applicability or lack thereof is unclear and appears to have changed at oral argument for this appeal. Regardless of respondents' actual position, we issue this opinion to clarify for Nevada practitioners that the above-mentioned general understanding is mistaken and that litigants are not free to disregard the rules of civil procedure, including NRCP 16.1(a)(1)(C).

SUPREME COURT
OF
NEVADA

(O) 1947A

26(e), "[a] party has an ongoing duty to supplement its initial disclosures"); *Olaya v. Wal-Mart Stores, Inc.*, No. 2:11-cv-997-KJD-CWH, 2012 WL 3262875, at *2-3 (D. Nev. Aug. 7, 2012) (same); *cf. Calvert*, No. 2:13-cv-00464-APG-NJK, 2015 WL 631284, at *2 (observing that the purpose of providing a computation of damages is not necessarily to pinpoint an exact dollar figure but to "enable the defendants to understand the contours of their potential exposure and make informed decisions regarding settlement and discovery" (quotation omitted)). Thus, to the extent that the district court absolved respondents of their obligation under NRCP 16.1(a)(1)(C) to provide a computation of Christian's future medical expenses based on *FCH1* or a general understanding amongst Nevada practitioners, doing so was an error of law.[7] *See* NRCP 59(a)(7). We clarify that when a party has failed to abide by NRCP 16.1's disclosure requirements, NRCP 37(c)(1) provides the appropriate analytical framework for district courts to employ in determining the consequence of that failure. Under NRCP 37(c)(1), a party is prohibited from "us[ing] as evidence at trial . . . any witness or information not so disclosed" unless the party can show there was "substantial justification" for the failure to disclose or "unless such failure is harmless." *See also* NRCP 16.1(e)(3)(B) (providing for discretionary

---

[7]We note, however, that pain and suffering damages are not subject to NRCP 16.1(a)(1)(C)'s computation-of-damages requirement. *See* NRCP 16.1 drafter's note (2004 amendment) ("Paragraph (1)(C) is intended to apply to special damages, not general or other intangible damages."); *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 n.1 (D. Nev. 2011) (recognizing that the federal counterpart to NRCP 16.1(a)(1)(C) does not require a computation of pain and suffering damages because those damages "are subjective and do not lend themselves to computation").

exclusion of evidence under similar circumstances if an attorney "fails to reasonably comply with any provision of [NRCP 16.1]").

As indicated, however, even when one of NRCP 59(a)'s new-trial grounds has been established, the established ground must have "materially affect[ed] the substantial rights of [the] aggrieved party" to warrant a new trial.[8] Here, we conclude that the district court was within its discretion in determining that a new trial was not warranted. *Gunderson*, 130 Nev. at 74, 319 P.3d at 611. Important to our conclusion is that appellant is not contesting whether Christian's future lumbar surgery is *necessary*, but only whether the testified-to cost of that surgery is *reasonable*. In this regard, the district court observed that appellant was able to elicit opinions from her medical expert, Dr. Duke, as to whether Dr. Kaplan's $224,100 cost estimate was reasonable, to which Dr. Duke responded that the estimate "look[ed] very high." Likewise, on cross-examination, Dr. Duke further opined that "[$]120,000 is what I've seen in the past for the [lumbar] fusion."

Appellant contends that these opinions did not carry as much weight for the jury as they might have if Dr. Duke had been given more time to review Dr. Kaplan's cost estimate. However, appellant made no offer of proof, submitted no affidavits, and provided no further medical opinions in conjunction with her new trial motion, nor has she otherwise explained on appeal what additional testimony Dr. Duke would have

---

[8]We disagree with appellant's suggestion that we should employ NRCP 37(c)(1)'s framework in resolving this appeal. Because appellant is appealing the district court's denial of her motion for a new trial, we necessarily consider the appeal under NRCP 59(a)'s framework and the abuse-of-discretion standard of review applicable to new trial motions. *See Gunderson*, 130 Nev. at 74, 319 P.3d at 611.

provided or what testimony her proffered medical billing expert (discussed below) could have provided regarding Dr. Kaplan's estimate for the surgery. *Cf.* NRCP 59(a)(4) (providing that a new trial may be warranted based upon "[n]ewly discovered evidence material for the party making the motion which the party could not, with reasonable diligence, have discovered and produced at the trial"). Also in this respect, the district court found that Dr. Duke should have been able to provide such testimony even given the time constraints because he performs the same type of surgery and because he was Dr. Kaplan's former practicing partner. Moreover, it appears that the jury *did* give credence to Dr. Duke's opinions, as the amount awarded for Christian's surgery ($200,000) was less than Dr. Kaplan's $224,100 estimate. Under these circumstances, we conclude that appellant's substantial rights were not materially affected by allowing Dr. Kaplan to testify regarding the cost of Christian's lumbar surgery without having provided a cost computation under NRCP 16.1(a)(1)(C). NRCP 59(a). Accordingly, the district court was within its discretion in denying a new trial insofar as appellant's request related to the cost of Christian's future medical treatment.[9]

---

[9]As indicated, appellant has not presented any individualized arguments regarding Maria's future medical expenses. To the extent appellant seeks a new trial on those grounds, a new trial is unwarranted. Maria's treating physician testified that he was familiar with the billing practices for roughly 20 of the 40 Las Vegas-area pain management specialists and that he charges $16,000 per radiofrequency procedure. Appellant has not explained what testimony her proffered medical billing expert or anyone else would have provided to challenge the reasonableness of that billing rate. Thus, appellant's substantial rights were not materially affected by allowing Maria's treating physician to testify regarding the cost of her future medical treatment. NRCP 59(a).

*Additional arguments*

Appellant raises several additional arguments in support of her new trial motion. As explained below, to the extent that any of the arguments might satisfy one of NRCP 59(a)'s new-trial grounds, appellant has not demonstrated that her substantial rights were materially affected.

*Exclusion of appellant's medical billing expert*

Appellant proffered a registered nurse, Tami Rockholt, to testify as a "medical billing expert" regarding the reasonableness of respondents' past medical expenses. From what can be determined from the record, it appears that Nurse Rockholt reviewed the costs for each medical procedure respondents underwent and was prepared to testify that the costs for those procedures were higher than the average cost that doctors in southern Nevada charge for those procedures.[10] On this subject, Nurse Rockholt sought to opine that although Christian was seeking roughly $57,000 in past medical expenses, the reasonable cost was roughly $36,000. Likewise, Nurse Rockholt sought to opine that although Maria was seeking roughly $43,000 in past medical expenses, the reasonable cost was roughly $24,000.

The district court struck Nurse Rockholt as a witness, and although the record is unclear, the decision appears to have been based on one or more of the following reasons: (1) she was not qualified to provide an expert opinion on medical billing, (2) her opinion would not be helpful to the jury, and/or (3) her opinion implicated the collateral source rule. Nevertheless, the district court permitted Dr. Duke to read to the jury

---

[10]The record is unclear whether Nurse Rockholt was equating "reasonable" with "average" or some other metric.

Nurse Rockholt's opinions from her report—i.e., to opine on Nurse Rockholt's behalf that $36,000 in past medical expenses was reasonable for Christian and that $24,000 in past medical expenses was reasonable for Maria.

The jury ultimately awarded Christian and Maria all of the past medical expenses they had requested, and appellant raised the exclusion of Nurse Rockholt as a basis for a new trial. Without revisiting whether the exclusion of Nurse Rockholt had actually been proper, the district court determined that appellant's substantial rights had not been materially affected because Dr. Duke had been able to opine on Nurse Rockholt's behalf.

On appeal, appellant continues to argue that the exclusion of Nurse Rockholt's testimony warrants a new trial. We disagree. Although we cannot determine from the record whether the district court properly exercised its discretion in excluding Nurse Rockholt under any of the three aforementioned reasons, see FCH1, 130 Nev., Adv. Op. 46, 335 P.3d at 188 (reviewing the admission or exclusion of evidence for an abuse of discretion), we nevertheless conclude that this issue does not warrant a new trial because appellant has not demonstrated that her substantial rights were materially affected. See NRCP 59(a). In particular, and as the district court noted in denying appellant's new trial motion, Dr. Duke was allowed to testify regarding the reasonableness of respondents' past medical expenses based on Nurse Rockholt's opinions. Appellant does not dispute that Dr. Duke was permitted to provide Nurse Rockholt's opinions on her behalf, nor does appellant meaningfully explain why she was prejudiced by not being permitted to have Nurse Rockholt provide her opinion directly. Thus, the district court was within its discretion in

determining that the exclusion of Nurse Rockholt did not warrant a new trial.

*Attorney misconduct*

Appellant contends that a new trial is warranted because respondents' counsel engaged in misconduct during closing arguments. *See* NRCP 59(a)(2). By way of example, respondents' counsel made the following statements:

> You have important power and important duty and a service that you provided here for us today. And you have two options. If your verdict is too low, then that tells people they can get away with breaking the rules.

After appellant objected and the district court instructed counsel to modify his closing arguments, counsel stated:

> Just so we're clear, when you go into that jury room and reach this verdict, your verdicts are read. Plaintiff reads it, the defense reads it. Other people . . . here in the courtroom read it. Your verdict might even hit the paper. Verdicts hit the paper. The reason they do that is because people read verdicts. And verdicts shape how people follow the rules. I submit to you the evidence in this case. If you return a verdict that is too low, people don't follow the rules.

According to appellant, these statements and others made by respondents' counsel constituted misconduct because they amounted to a "golden rule" argument, which is prohibited under *Lioce v. Cohen*, 124 Nev. 1, 20-23, 174 P.3d 970, 982-84 (2008). We disagree that the statements identified by appellant amounted to a golden rule argument.[11]

---

[11]Beyond asserting that counsel's comments amounted to a golden rule argument, appellant has not argued that counsel's comments

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

Under *Lioce*, "attorneys violate the 'golden rule' by [(1)] asking the jurors to place themselves in the plaintiff's position or [(2)] nullify the jury's role by asking it to 'send a message' to the defendant *instead of evaluating the evidence.*" *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 368-69, 212 P.3d 1068, 1082 (2009) (quoting *Lioce*, 124 Nev. at 20-23, 174 P.3d at 982-84 (emphasis added)). We are not persuaded that counsel's comments during closing arguments amounted to a golden rule argument. *See Lioce*, 124 Nev. at 20, 174 P.3d at 982 (reviewing de novo whether an attorney's comments amount to misconduct). First, it does not appear that counsel necessarily asked the jurors to place themselves in respondents' position. Second, to the extent that counsel's comments could be construed as asking the jurors to "send a message," counsel asked the jury to do so *based on the evidence.* In *Gunderson*, 130 Nev. at 77-78, 319 P.3d at 613-14, although this court did not expressly approve of "send a message" arguments, we concluded that such arguments are not prohibited so long as the attorney is not asking the jury to ignore the evidence. Thus, counsel's comments did not amount to an improper golden rule argument under *Lioce* and *Gunderson*, meaning that a new trial due to attorney misconduct is unwarranted.[12] *Lioce*, 124 Nev. at 20, 174 P.3d at 982; *see* NRCP 59(a)(2).

---

*...continued*
amounted to misconduct under Nevada law for any other reason. We therefore confine our analysis to the issue presented.

[12]We also agree with the district court's conclusion that counsel's conduct during opening statements does not warrant a new trial. *See Lioce*, 124 Nev. at 17, 174 P.3d at 981 (setting forth the standard for objected-to and admonished misconduct). Additionally, appellant contends that respondents' counsel committed misconduct by (1) disparaging Dr.
*continued on next page...*

*Exclusion of medical lien evidence*

Appellant contends a new trial is warranted because the district court abused its discretion by excluding evidence that respondents' treating doctors who testified at trial had obtained medical liens. *FCH1*, 130 Nev., Adv. Op. 46, 335 P.3d at 188 (reviewing a district court's decision to admit or exclude evidence for an abuse of discretion).[13] According to appellant, this evidence would have been relevant to show that respondents' treating doctors were biased, in that a large verdict would increase the likelihood they would be paid for their services. While appellant is correct that evidence of medical liens may be relevant to show bias depending upon the terms of the medical lien, this court recently recognized in *Khoury v. Seastrand*, 132 Nev., Adv. Op. 52, 377 P.3d 81, 94

---

...*continued*
Duke, (2) referring to insurance, and (3) disparaging appellant's case. Having considered the cited-to portions of the record where these alleged instances of misconduct occurred, we are not persuaded that respondents' counsel engaged in misconduct. *Lioce*, 124 Nev. at 20, 174 P.3d at 982.

[13]Appellant also contends the district court improperly (1) excluded evidence of a surveillance video, and (2) prohibited Dr. Duke from opining that respondents had secondary gain motivations. The district court excluded the surveillance video after determining appellant should have disclosed the video in compliance with an initial disclosure deadline, not an extended deadline. The district court prohibited Dr. Duke from opining regarding secondary gain motivations after finding he was not qualified to provide such an expert opinion. Appellant has not addressed the district court's stated bases for excluding this evidence, and we conclude that the district court was otherwise within its discretion in excluding the evidence. *FCH1*, 130 Nev., Adv. Op. 46, 335 P.3d at 188; *cf.* NRCP 16.1(e)(3)(B) (permitting exclusion of evidence not produced in compliance with disclosure deadlines); *Hallmark v. Eldridge*, 124 Nev. 492, 498-99, 189 P.3d 646, 650-51 (2008) (requiring an expert witness to be qualified to provide his or her opinion).

(2016), that the degree of relevance is "limited," particularly when the medical liens indicate the plaintiff will still be responsible for his or her medical bills if he or she does not obtain a favorable judgment. Here, and despite not having the benefit of the subsequently issued *Khoury* decision, the district court determined the liens would be of limited relevance for the same reason put forth in *Khoury*. Additionally, the district court believed that introduction of medical liens would not simply show that respondents' treating doctors were biased, but that they "would have a motivation to lie." Thus, the district court excluded evidence of the medical liens based on the court's belief that the limited probative value of the liens would be substantially outweighed by the unfairly prejudicial effect of coloring respondents' doctors as liars. *See* NRS 48.035(1).

While we recognize that the district court's distinction between "bias" and "motivation to lie" is nuanced, appellant has not addressed on appeal whether the district court erred in drawing that distinction. Thus, in light of the medical liens' limited relevance and appellant's failure to address the district court's basis for determining the liens would be unfairly prejudicial, we are not persuaded that the district court necessarily abused its discretion in excluding that evidence, particularly when the district court did not have the benefit of this court's *Khoury* opinion at the time it made its decision. *FCH1*, 130 Nev., Adv. Op. 46, 335 P.3d at 188. Accordingly, this alleged error does not warrant a new trial. NRCP 59(a)(1).

## CONCLUSION

We clarify that this court's opinion in *FCH1, LLC v. Rodriguez*, 130 Nev., Adv. Op. 46, 335 P.3d 183 (2014), does not absolve a party of his or her affirmative obligation under NRCP 16.1(a)(1)(C) to

SUPREME COURT
OF
NEVADA

(O) 1947A

16

provide a computation of future medical damages that are to be sought at trial. Because respondents failed to provide appellant with a computation of their future medical damages, the district court erred in permitting respondents to introduce evidence in support of those damages. But because appellant has not shown that she was unable to contest the reasonableness of the amounts requested, we conclude that appellant's substantial rights were not materially affected so as to warrant a new trial. Because appellant's remaining arguments also do not warrant a new trial, we affirm the district court's judgment on the jury verdict.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich